STATE OF TENNESSEE v. THE EDGEFIELD AND KENTUCKY RAILROAD COMPANY et al.

1. RAILROAD RECEIVER. *Public agents. Liability of State for their acts.* Statutory receivers of railroads, to some extent, were public agents, and unless acting within the scope of their authority, the State not bound by their acts.

2. SAME. *Power to contract debts.* Statutory receivers of railroads have no power to contract debts to be paid otherwise than out of the earnings of the roads.

3. SAME. *Duty of the State to continue receivership.* There was no obligation on the State to continue the receivership until the current indebtedness of the receivership was paid.

4. SAME. *Enhancement of value of mortgaged property.* The fact that the indebtedness created by the receiver enhanced the value of the property on which the State had a mortgage, cannot add strength to the claim.

5. SAME. *Receiver appointed by court, and receiver under contract, distinguished.* A court of chancery, by its inherent powers, may enlarge the power of its receiver, but no such power exists as to a receiver by contract.

FROM DAVIDSON.

Appeal from the Chancery Court at Nashville. McHENRY, Sp. Ch.

W. F. COOPER, E. H. EWING and W. B. REESE for complainant.

J. P. HELMS for defendants.

J. M. GAUT, Sp. J., delivered the opinion of the court.

Under the act of the General Assembly of the State of Tennessee, passed February 11, 1852, and subsequent acts either amendatory thereof or similar in character, the State of Tennessee extended its aid to the various railroad companies of the State, and among others, to the Nashville & Northwestern Railroad Company, and the Memphis, Clarksville & Louisville Railroad Company, by issuing to them the coupon bonds of the State, having thirty years to run, and bearing six per cent. interest, payable semi-annually. One of the conditions of the grant, as fixed by the statutes, was that each company should pay into the State treasury,

at least fifteen days before the interest became due, from time to time, upon said bonds, an amount sufficient to pay the interest upon the bonds issued to it, including exchange and commissions, or furnish evidence that such interest had been paid or provided for; and should also pay into the treasury an annual sum in State bonds, as a sinking fund, preparatory. to the extinguishment of the principal. To secure the payment of the bonds and interest, a lien was reserved. in favor of the State upon the respective roads, superstructures and equipments, both that prepared at the time the bonds were issued and that to be thereafter completed and furnished, which lien was expressly made superior to all others which the companies migh create, and superior to all claims existing or to exist against said companies. As further security for the payment of the interest on the bonds, it was provided, that in case any of said companies should fail to. pay the interest in accordance with the above stated provision, "the Governor shall immediately appoint some suitable person or persons, at the expense of the company, to take possession and control of said railroad, and all the assets thereof, and manage the same, and receive the rents, issues, profits and dividends thereof, whose duty it shall be to give bond and security to the State of Tennessee, in such penalty as the Governor may require, for the faithful discharge of his or their duty as receiver or receivers, to receive said rents, issues, profits and dividends, and pay over the same, under the direction of the Governor, towards the liquidations of such unpaid interests," etc., and that "said

receiver, so appointed, shall continue in the possession of said road, fixtures and equipments, and run the same, and manage the entire road until a sufficient sum shall be realized, exclusive of the costs and expenses incident to said proceedings, to pay off and discharge the interest, as aforesaid, due on said bonds, which being done, the receiver shall surrender said road and fixtures and equipments to said company." A like proceeding was also authorized in case of a failure to pay any installment of sinking fund. Both of the above named companies made default in the payment of interest, and were placed in the hands of receivers.

On the 21st of December, 1870, the General Assembly passed an act directing a bill to be filed in the chancery court at Nashville, in behalf of the State, against all the delinquent railroad companies, their respective stockholders, holders of the bonds, creditors and all persons interested in the roads, to determine all questions which had arisen, or might arise touching the rights and interests of the State, and also of said defendants, in said roads, with a view to a sale of the State's interest therein. Pursuant to this act, on the 20th of January, 1871, a bill, and on April 15, 1871, an amended bill, was filed by the State against said delinquent railroad companies by name, and by general description, under the rules of chancery practice, against all of their stockholders, bondholders, lien and general creditors, and all other persons having any interest in the roads.

The bill prays, that after the rights of all parties.

have been adjudicated, the State's interest in the roads may be sold, or the roads themselves, with all their property and franchises, if found necessary or for the interest of all parties, and expressly or tacitly assented to by such parties.

Under this bill such proceedings were had that, on the 6th day of July, 1871, the cause was finally heard as to the Memphis, Clarksville & Louisville road, and on the 8th of the same month as to the Nashville & Northwestern, when the State's lien was decreed to be superior to all others, the roads were ordered to be sold, and the proceeds applied to the respective debts therein ascertained to be due the State. From this decree no appeal was taken by any of the parties. In the meantime, however, on the 6th of June, 1871, these petitioners presented their petitions, asking to be permitted "to file them as defendants," and upon their application the order taking the bills for confessed was, as to them, set aside, they allowed to file their petitions, and "litigate the questions involved." In the decrees of July 6th and 8th above recited, the petitioners are ordered to file their claims within a given time, the master is ordered to report their amount, all questions of law and fact as to the same are reserved, and a sufficient amount of the proceeds of the sales of the roads to cover them is ordered to be held subject to the future decree of the court.

The order of reference was executed, and in July, 1874, the cause was finally heard as to petitioners, upon a motion of the State to dismiss the petitions and a motion of the petitioners to confirm the report,

when the chancellor allowed the former motion and disallowed the latter, dismissing the petitions with cost. From this decree petitioners have appealed.

The petitioners filed no answers to the original or amended bill. On the final hearing of the original cause, as above stated, their petitions seem to have been treated as answers, though they do not purport to answer the bills, and in fact allude to only a few of their allegations, and only to these by way of statement of the petitioners' cases.

On the other hand, the State, after treating the petitions as answers, undertook to treat them as bills, and moved to dismiss them, the motion, however, not specifying the ground on which it is based.

The propriety of this pleading and practice might be seriously called in question were it not for the justification which is perhaps furnished by the statute under which the bill was filed, which provides, "that, in the discretion of the court, formal pleadings may be dispensed with by a simple statement on the record of the points or matters relied upon by the parties and sought to be decided by the court." At all events, the argument in this court has invoked a decision on the merits, and we prefer to so dispose of the case.

The petition of A. Birchall and others avers, that, under the internal improvement laws, the State had issued to the Nashville & Northwestern Railroad Company a large amount in State bonds, upon which the railroad company was bound to pay the semi-annual interest as it fell due. That upon default, the State

had the right to appoint a receiver to take charge of the road, run the same, and out of the earnings, after paying the incidental expenses, to pay the interest on the bonds. That the receiver was authorized to employ the necessary labor and purchase the necessary materials. That, under the provisions of these laws, the Governor of the State, in September, 1867, placed the road in the hands of a receiver, and that it continued in the possession of and was run by successive receivers till September, 1869, when it was leased by the stockholders and the State to the Nashville & Chattanooga Railroad Company. That, under contract with said receivers, the petitioners did work and labor on said road, constructing, repairing and running the same, and furnishing cross-ties, wood and other materials necessary to its successful operation, and were to be paid out of the earnings of the road, but that, upon settlement, the receiver failed and refused to pay them for the labor or materials, but gave to some of them certificates of indebtedness, and to others no evidence of the amount due. The amount claimed to be due each petitioner is specifically set forth. They aver that the work and labor was done and materials furnished while the road was in the possession of and being run by the State through the receivers, and that they were necessary for its successful operation. That the "complainant or the road is indebted to them in the just sums" set forth, and that "said road is and was insolvent at the time of the contracting of their claims against it." They further state, that they are advised that they have a lien,

superior to all other claims or liens, against said road; insist that the statute authorizing the receivers to run the roads, and the express stipulation that they were to pay the expenses out of the proceeds of the same, together with their contract with said receivers, amounts to a contract. That the State and the stockholders having leased the road for a series of years to the Nashville & Chattanooga Railroad Company, and authorized that company to make "large expenditures in the construction and repairing of said road, to be allowed said lessees out of said road, placed. it beyond the power of the complainant or the stockholders to pay your petitioners out of the proceeds and earnings of the road." That this action was in violation of the contract, and that they have a right to come into the court and ask an enforcement of said contract, and that the money owing them be paid out of the proceeds of the sale of the road, upon which proceeds they insist they have a lien. They further insist, that, inasmuch as the complainant has filed a bill to sell the road, they have a right to come into court and ask that the same be paid out of the proceeds of the sale thereof.

The petition of Charles Briggs and others, creditors of the Memphis, Clarksville & Louisville Railroad Company, is substantially the same as that of Birchall and others, except that it contains no averment of leasing, and excepting, also, that it alleges that "for the past few years the earnings of the road had exceeded the incidental and running expenses, and that there was then a large sum of surplus earnings in the

hands of the receiver.    The petitioners pray, first, that they be paid out of that fund; or, second, if that fund be not sufficient, or be subject to superior liens, out of the proceeds of the sale, upon which they claim a lien; or, third, if the court should be of opinion that they have no lien on such proceeds, that the court will not let the title to the road pass until they are paid "out of the earnings of said road or otherwise."

It is admitted in argument by the solicitors for petitioners, that the allegation as to a fund in the hands of the receiver is a mistake.    Moreover, it does not appear in the averments of the petition or elsewhere in this record that the State is claiming said fund, or in any way attempting to divert it from the payment of petitioners' claims.    The receiver is a public agent: *Erwin* v. *Davenport,* Sup. Court of Tenn., 1872; *Hopkins* v. *Connell,* December term, 1880.    For any wrongs or defaults of its public officers or agents, the State is not responsible: *State* v. *Ward and Briggs,* 9 Heis., 120.    On the other hand, the receiver is a bonded officer, and, as such, is responsible to all parties aggrieved for any illegal diversion of funds received by him.    We may therefore dismiss this feature from further consideration.

One position which seems to be assumed in the petition is, that the receivers being agents of the State, their contracts are the contracts of the State.    This position, if true, would only make petitioners general creditors of the State.    It would give them no rights whatever as against the property of the railroad com-

panies. Nor would it give them any lien upon the property of the State. Their right to the fund in court, regarding it as belonging to the State, would only be the right which every creditor has, to appropriate to the payment of his debt, by due process of law, the property of his debtor. In this aspect of the case, their entrance into court would properly be, not as defendants in this suit, but as complainants in an original bill. Such a bill, however, they could not maintain because of the State's exemption from suit.

But the question of the State's liability to petitioners deserves further consideration. The receivers were undoubtedly, to some extent at least, public agents of the State. The State is not bound by the acts of her public officers or agents unless it manifestly appear that they are acting within the scope of their authority: *State* v. *Ward and Briggs,* 9 Heis., 125; *Floyd Acceptances,* 7 Wall., 680. The letter of authority to these agents was a public statute, of which everybody is bound to take notice: *Idem.* This statute provides that, upon the happening of the contingency, the receiver shall take possession of the road, "and run the same, and manage the entire road until a sufficient sum shall be realized, exclusive of costs and expenses incident to said proceedings, to pay off and discharge the interest as aforesaid, due on said bonds, which being done, the receiver shall surrender said road and fixtures and equipments to said company." Authority to an agent to do an act, usually carries with it authority to employ the usual and necessary means to

accomplish it.    This is because of the presumed intention of the principal. But where the principal restricts the agent to the use of certain means, he can employ no other.    The receivers were authorized to run the roads.    Was it usual and necessary in order to do so, to create debts and charge them on the road by a lien superior to that of the State? Such expedients had not been usual, and it is very sure that they were not, in the minds of the Legislature, regarded as necessary.    The statute assumes that the earnings of the road would be sufficient to pay the incidental expenses.    At all events, it directs, as the petitioners themselves insist, that they shall be paid out of the earnings, and, under a well known rule of construction, all other modes of payment are thereby excluded.    The Legislature simply intended that the receiver should take the place of the company, and employ the same means which it employed. The object of the receivership was only to insure to the State a prudent and honest management of the road's finances, and the appropriation of its net profits to the payment of interest and sinking fund.    Were the statute silent as to the means to be employed, the power on the part of the receiver to contract debts against the State to the extent of his ideas of necessity in operating a railroad, and secure their payment by displacing the State's statutory lien, is so dangerous a power that we would not be disposed to deduce it by implication.    It must be presumed that if the Legislature intended such a power to exist, it would have been expressly conferred.

But it is insisted that the provision in the statute that the receiver shall run the road until a sufficient sum is raised, exclusive of costs and expenses, to pay the interest, amounts to an agreement on the part of the State not to terminate the receivership until at least the cost and expenses are paid ; that the leasing of the Nashville & Northwestern road by her assent was a violation of the contract, and the offer to sell the Memphis, Clarksville & Louisville road was an attempt to violate it. The result to which this theory leads is, that if the costs and expenses are never paid, the receivership shall never terminate. That if the road will not pay running expenses, the contracting of the first debt which the receiver is unable to pay renders it obligatory upon the State to continue piling up such debts higher and higher, *ad infinitum.* This absurdity proves the theory incorrect. The receivership was provided solely for the benefit of the State, and the State had the right to terminate it at pleasure. We might, perhaps, conceive of a case in which it was terminated in such undue haste and under such circumstances as to operate as a fraud on those who contracted with the receiver in the meantime, but that is not the case. Innes, as receiver, took charge of the Northwestern road in September, 1867, and was succeeded by Cliff in 1868, who continued till the lease in September, 1869. Lewis took charge of the Memphis, Clarksville & Louisville road in 1865, was succeeded by Brown, and he by Henry, who continued in charge till the sale in 1871. Many of the claims of Birchall and others originated under Innes,

and all of those of Briggs and others, except one, under Lewis in 1867. Assuming, as we must, that the receivers did their duty, the roads did not pay running expenses, else petitioners' claims would not remain unpaid. The State seems to have made an honest effort to secure itself with the least detriment to the companies and their creditors. The experiment of receiverships, after a fair test, having proved a failure, they were abandoned. There is not the slightest probability that a continuance of the experiment would have benefitted petitioners. As the petitioners must be presumed to know the law, they contracted with the receivers, knowing that the earnings of the roads were their only means of payment, and that the State had the right to cut off this source at pleasure. They therefore assumed the risk of its adequacy and its continuance. It is, however, only the same risk which they would have incurred had the roads remained in charge of the companies.

This view of this question is sustained by High, in his work on Receivers, secs. 302 and .379. By petitioners' solicitors we are cited to *Fosdick* v. *Schall* and *Hale* v. *Frost*, 9 Otto, and *Meyer* v. *Johnston*, 53 Ala., 237. All of these are cases growing out of receiverships created by a court of chancery at the instance of mortgage bondholders. In *Hale* v. *Frost*, the application was to pay out of the net earnings in the hands of the receiver, debts contracted before the receivership, for machinery and for materials for construction purposes. The mortgage covered not only the property of the company, but also its net earn-

ings. The court allowed the claims for machinery, but disallowed that for materials for construction purposes, assigning no reason for the distinction, but simply referring to *Fosdick* v. *Schall.* The latter case was one in which a receiver hired of their owner cars which were necessary for the operation of the road, and paid the hire out of his receipts. The court holds that this was proper. This is all, as regards the point in question, that the case decides. There are *dicta* in the case which go some further. Chief Justice Waite, who delivers the opinion, says, that when it appears that the company has applied its current receipts, with which it should have paid current expenses, to the payment of interest or making of permanent improvements beneficial to the mortgagee, the court may, in appointing a receiver—which is not a matter of right, but one resting in the sound discretion of the court—exact as a condition that those current expenses shall be paid out of the profits of the receivership, and that whatever the court might have exacted in advance, it could require before surrendering the fund. But it is evident that the payment suggested, being one out of the income, would not postpone the mortgage lien. The mortgage, it is true, covered the income as well as the road itself, but it was only the *net* income. The debts in question were current expense debts, so that, by the very terms of the mortgage itself, enough of the income sufficient to pay them was exempted out of the mortgaged property. The only lien which would be interfered with, would be that equitable lien which the

mortgagee had fixed upon the earnings by impounding them in the hands of a receiver. But this lien, in the view of the learned judge, was one which had been granted him as a favor from the court, in return for which it had a right to make exactions. Moreover, the state of facts supposed by the chief justice, is not shown to exist in this case. The damage accruing to the roads during the war had been repaired chiefly, if not entirely, out of large loans made by the State, which had never been repaid. When the bill was filed, the Northwestern Company owed the State, upon a principal of $3,222,000, funded and unfunded interest amounting to $1,319,129; and the Memphis, Clarksville and Louisville Company, on a principal of $1,582,000, was indebted for interest to the amount of $871,525. *Prima facie*, says the court in *Fosdick* v. *Schall*, the fund in the receiver's hands belongs to the mortgagee, and the claimant must overcome the presumption.

*Meyer* v. *Johnston*, 53 Ala., for the very able opinion it presents, deserves and has received our careful consideration. Briefly stated, it decides that a court of chancery taking possession of property, through a receiver, pending litigation, has the power, in the absence of sufficient income, to charge the *corpus* with such expenses as are necessary *for its custody and preservation;* that the keeping of a railroad in repair and operating its trains are necessary for its custody and preservation, and also necessary for the public good. However much we may be impressed with the reasoning in that case, it is only necessary to say, that

whatever may be the inherent powers of a court of chancery, independent of the will of the parties, as to receiverships created by it, a receivership outside of court, created by contract, must ·be controlled by the terms of that· contract. Whenever the rights of the receiver's creditors are drawn in question, the contract, so far as it speaks, must be the law of the case. The public good, as well as the State's pecuniary interests, was a matter under the State's supreme control, and it had a right to contract with reference to either as it saw fit. Construing the contract as we do, it provided that the expenses of the road should be paid out of its earnings and not otherwise. If they proved insufficient, it can only be a matter of regret with the court as with the unfortunate creditors.

The claim for the relief sought by petitioners, has sometimes been predicated upon the ground that the debt contracted by the receiver has enhanced the value of the mortgaged property. But this fact, if clearly shown, is not sufficient. This court held, in *Bird* v. *Bank of Tennessee*, 1 Sneed, 262, and *Pride* v. *Viles*, 3 Sneed, 127, that a mechanic who built a house upon mortgaged ground, under contract with the mortgagor, had no lien or equity superior to that of the mortgagee. And in the above cited case of *Meyer* v. *Johnston*, the chancellor had ordered the receiver to issue a large amount of certificates of indebtedness for the purpose of completing the road, and ordered that they be made a prior lien on the road, and paid first out of the proceeds of its sale. The court held, that

The State *v.* McM. & M. Railroad Co.

however beneficial this might be to the mortgagees, it could not be done without their consent; that to permit it, would be to permit the impairing of the obligation of the contract.

Our conclusion is, that the petitioners are not entitled to the relief sought, and the petitions are therefore dismissed. The petitioners will pay the costs of this court, and the costs of the court below will be paid as decreed by the chancellor.